NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

PRECISION RENTALS, LLC, *Plaintiff/Appellant*,

*v.*

BRYAN BOHANNON, et al., *Defendants/Appellees*.

No. 1 CA-CV 25-0578

FILED 05-22-2026

Appeal from the Superior Court in Maricopa County
No. CV2023-014850
The Honorable Jennifer C. Ryan-Touhill, Judge

**VACATED AND REMANDED**

COUNSEL

Foster Law Partner, Phoenix
By Brian J. Foster, Ross P. Meyer
*Counsel for Plaintiff/Appellant*

Mesch Clark & Rothschild PC, Tucson
By Barney M. Holtzman, Andrew Richards
*Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Andrew M. Jacobs and Judge James B. Morse Jr. joined.

---

**F U R U Y A**, Judge:

¶1　　　　Precision Rentals, LLC ("Precision Rentals") appeals the superior court's entry of summary judgment in favor of Modern Lift, Inc. ("Modern Lift"). For the following reasons, we vacate the judgment and remand for further proceedings.

### FACTS AND PROCEDURAL HISTORY

¶2　　　　Precision Rentals was a construction equipment rental company that rented to general contractors and subcontractors.[1] Bryan Bohannon began his employment as a salesperson at Precision Rentals in 2016. In 2019, Precision Rentals presented its sales representatives with a "Confidentiality, Non-Disclosure, Non-Solicitation, Non-Competition, and Assignment Agreement" to protect its recent investment of $6 million into new rental equipment. Bohannon executed this agreement October 2019. The Non-Solicitation Agreement prohibited Bohannon from soliciting clients and prospective clients during the twelve-month period immediately following his separation or termination from Precision Rentals.

¶3　　　　In July 2023, Bohannon left Precision Rentals to work at Modern Lift, another company that rents construction equipment to general contractors and subcontractors. Precision Rentals alleges that while employed by Modern Lift, Bohannon solicited Precision Rentals' customers and that "[w]hen Mr. Bohannon left, Precision Rentals' sales dropped 'due to [Mr. Bohannon] leaving and taking a couple of significant customers with him.'" Precision Rentals states Bohannon diverted $495,505.01 in revenue from Precision Rentals to Modern Lift.

¶4　　　　In September 2023, Precision Rentals filed a complaint against Bohannon and Modern Lift, later requesting a temporary restraining order to enforce the Confidentiality and Non-Solicitation restrictions against

---

[1]　　　Precision Rentals sold its business in January 2024.

Bohannon. After holding a hearing, the superior court issued a ruling in favor of Bohannon and Modern Lift, finding that Precision Rentals was unlikely to succeed on the merits. Modern Lift then filed a Motion for Summary Judgment in November 2024, which the court ultimately granted in May 2025, awarding attorneys' fees, costs, and sanctions.

¶5 Prior to entry of judgment, Precision Rentals filed a Motion for Reconsideration in March 2025 and a Motion for New Trial in May 2025, both of which were denied. Precision Rentals timely appealed following entry of final judgment. Ariz. R. Civ. P. 54(c). We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") Sections 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**I. The Superior Court Erred in Granting Modern Lift's Motion for Summary Judgment Because the Restrictive Covenant Was Reasonable and Enforceable.**

¶6 We review a grant of summary judgment de novo. *Glazer v. State*, 237 Ariz. 160, 167 ¶ 29 (2015). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). "We view the facts and any inferences drawn from those facts in the light most favorable to the party against whom judgment was entered." *Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 199 ¶ 15 (App. 2007).

¶7 Non-competition and non-solicitation covenants that restrict an employee's right to compete with an employer after termination of employment will generally be upheld if the restrictions are reasonable. *Fearnow v. Ridenour, Swenson, Cleere & Evans, P.C.*, 213 Ariz. 24, 26 ¶ 8 (2006). "A restriction is unreasonable and thus will not be enforced: (1) if the restraint is greater than necessary to protect the employer's legitimate interest; or (2) if that interest is outweighed by the hardship to the employee and the likely injury to the public." *Valley Med. Specialists v. Farber*, 194 Ariz. 363, 369 ¶ 20 (1999).

¶8 Here, Precision Rentals contends the court erred in holding, as a matter of law, that Precision Rentals' Non-Solicitation Agreement was unenforceable because it lacked a legitimate business interest for that protection. Precision Rentals also argues a genuine issue of material fact exists regarding the reasonableness of the agreement, which precludes entry of summary judgment, and which should be presented to the trier of

3

fact. We address the legitimacy of Precision Rentals' business interests in the Agreement and its reasonableness in turn.

### A.      Precision Rentals Had a Legitimate Interest to Protect.

**¶9**           Restrictive covenants that prevent employees from pursuing a similar vocation after termination of employment are disfavored. *Bryceland v. Northey*, 160 Ariz. 213, 216 (App. 1989). Thus, such covenants will not be upheld unless they "protect[] some legitimate interest beyond the employer's desire to protect itself from competition[,]" *Farber*, 194 Ariz. at 367 ¶ 12, and are no broader than necessary to protect that interest, *Amex Distrib. Co., Inc. v. Mascari*, 150 Ariz. 510, 515 (App. 1986). The legitimate interest of a post-employment restraint is "to prevent competitive use, for a time, of information or relationships which pertain peculiarly to the employer and which the employee acquired in the course of the employment." *Farber*, 194 Ariz. at 367 ¶ 12 (quoting Harlan M. Blake, *Employee Agreements Not to Compete*, 73 Harv. L. Rev. 625, 647 (1960)). "The burden is on the employer to prove the extent of its protectable interest." *Bryceland*, 160 Ariz. at 216.

**¶10**          We have previously acknowledged that "close customer contact with the attendant ability to divert customer trade . . . [is] one of the strong justifications for a noncompetition covenant from one through whom the goodwill of the enterprise is developed and exercised." *Amex Distrib. Co.*, 150 Ariz. at 518. We have long held that "[a]n employer does have a protectable interest in maintaining customer relationships when an employee leaves." *Bryceland*, 160 Ariz. at 217. The law upholds restrictive covenants to protect those relationships "for as long as may be necessary to replace the employee and give the replacement a chance to show that he can do the job" and resolution of "[e]ach case hinges on its own particular facts." *Id.*

**¶11**          Here, Precision Rentals argues it had a legitimate interest in its customer relationships, as well as the investment in millions of dollars' worth of rental equipment, which helped develop its customer base. The summary judgment briefings included affidavits sufficient to show existence of Precision Rentals' customer list and its investment of substantial funds over years for the purpose of expanding its ability to rent to more customers. These facts also establish that Bohannon solicited customers for Precision Rentals during his work that yielded significant revenue for Precision Rentals. Further, Precision Rentals maintains that when Bohannon left its employ, he "immediately began soliciting the

customers he built a relationship with, at Precision Rentals, and started renting to them at Modern Lift," in violation of their agreement.

¶12  Modern Lift and Bohannon counter that this evidence does not establish any legitimate business interest because those customers frequently rented from multiple equipment companies and some had pre-existing relationships with Bohannon personally and with Modern Lift. Nevertheless, the existence of a customer list is, itself, sufficient to preclude summary judgment as a matter of law, because we have recognized that such lists are legitimately protectable. *Id.* Modern Lift's critique does not challenge the legitimacy of the interest because of what it is, but rather because it allegedly maintains no value. And because "[e]ach case hinges on its own particular facts[,]" *id.*, whether sufficient value exists in Precision Rentals' customer list to support its claims for breach of the Non-Solicitation Agreement presents a genuine dispute of material fact as to whether Precision Rentals' customer relationships justify the restraint. Thus, the court erred in determining, as a matter of law, that protection of Precision Rentals' customer list and relationships was not a legitimate business interest.

### B.  The Duration of the Restrictive Covenant of Twelve Months Was Reasonable.

¶13  Precision Rentals also contends that the duration of twelve months of its restrictive covenant was justifiable and therefore, the restrictive covenant was reasonable. In determining whether a restraint is reasonable—i.e., no greater than necessary to protect the employer's interest—we assess the duration, geographic area, and activity prohibited by the restraint. *Farber*, 194 Ariz. at 370–71 ¶¶ 25, 27. "Courts seldom criticize restraints of six months or a year on the grounds of duration as such, and even longer restraints are often enforced." *Amex Distrib. Co.*, 150 Ariz. at 518 (quoting Blake, *supra*, at 677).

¶14  In *Amex Distributing Co.*, the court found that the duration of the covenant at issue, which was thirty-six months, had no justification. *Id.* Here, however, facts introduced during summary judgment briefing show the duration of twelve months is typical of the industry and Bohannon was only precluded from renting or soliciting the same clients he sold to while at Precision Rentals, for a period of 12 months, which Precision Rentals shortened because it sold its business in January 2024. Modern Rentals argues that 12 months is nevertheless excessive because of evidence indicating that training a replacement salesperson does not require imparting specialized knowledge and may take as little as 30–45 days. But

this merely highlights the fact-intensive nature of the reasonableness inquiry. *See Bryceland*, 160 Ariz. at 217 ("Each case hinges on its own particular facts."). And the question becomes still more factually complicated when considering that Bohannon immediately began soliciting Precision Rentals' clients without providing any time at all for Precisions Rentals to rebuild relationships after he left. The impact of such facts on the issue of the reasonableness of the agreement's duration cannot be decided as a matter of law without further factual development.

¶15        Because we cannot conclude based on this record that 12 months was greater than necessary to protect Precision Rentals' interest in its customer relationships, the superior court erred in finding the restriction unreasonable as a matter of law. Thus, whether the restriction is reasonable is a genuine dispute of material fact, for which summary judgment is inappropriate. Ariz. R. Civ. P. 56(a).

## II.        The Superior Court Erred in Granting Summary Judgment Regarding the Damages Dispute.

¶16        Precision Rentals also contends there was a genuine issue of material fact as to damages. Determination of "the amount of damages is a question particularly within the province of the jury." *Ritchie v. Krasner*, 221 Ariz. 288, 300 ¶ 36 (App. 2009) (citation modified). "Where the evidence or inferences would permit a jury to resolve a material issue in favor of either party, summary judgment is improper. Further, a court must view the evidence in a light most favorable to the non-moving party and draw all justifiable inferences in its favor." *Nat'l Bank of Ariz. v. Thruston*, 218 Ariz. 112, 116 ¶17 (App. 2008) (citation modified). A movant "may only obtain summary judgment if it submits undisputed admissible evidence that would compel any reasonable juror to find in its favor on every element of its claim." *Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 293 ¶ 20 (App. 2010).

¶17        Here, to contradict Modern Lift's interpretation of the loss of revenue, Precision Rentals points to evidence it presented of both lost customer revenue and a reduction in Precision Rentals' sales price due to Bohannon's breach of the restrictive covenant to support their assertion that a genuine issue of material fact exists. Precision Rentals identified twelve of its customers who collectively generated $495,505.01 in revenue for Modern Lift within months of Bohannon's departure from Precision Rentals. In fact, Modern Lift began receiving revenue from these customers within just one week of Bohannon's hire.

¶18 Modern Lift responds that most of these customers were leasing from both companies, some had relationships with Modern Lift before it hired Bohannon, some had relationships with Bohannon that pre-dated his employment with Precision Rentals, and some rented more from Precision Rentals than from Modern Lift. Modern Lift also argues an increase in its own revenue from those clients is not necessarily evidence of a decrease in Precision Rentals' revenue caused by Bohannon's departure. Modern Lift asserts that Precision Rentals failed to provide its own sales figures and this must be construed as an absence of damages. We disagree.

¶19 As noted, Precision Rentals provided evidence of reduced sales figures and also testimony from its former operations manager that sales dropped in correlation with Bohannon's departure. And Modern Lift admits that at least one customer who had no relationship with Bohannon before he was employed by Precision Rentals stopped renting from them after Bohannon left for Modern Lift. When viewing these facts—and all reasonable inferences from them—in the light most favorable to Precision Rentals, the record shows evidence that could support the fact of Precision Rentals' damages. Thus, the issue of damages presents a genuine dispute of material fact and we therefore vacate summary judgment.

## CONCLUSION

¶20 We vacate the summary judgment award and remand to the superior court for further proceedings.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:                JR